Christopher J. Langley – SBN 258851
chris@slclawoffce.com
Steven P. Chang – SBN 221783
schang@slclawoffice.com
**SHIODA, LANGLEY & CHANG LLP**
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Tel.: (626)281-1232
Fax.: (626)281-2919

Proposed Counsel,
Concord Industrial Products, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE

| | |
|---|---|
| In re<br><br>CONCORD INDUSTRIAL PRODUCTS, INC.<br><br><br>Debtor and Debtor-in-Possession. | Case No.  **6:26-bk-13154 SY**<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FILED BY ASSOCIATES EQUITY FUND VI, LLC**<br><br>*(Location: 311 Bonnie Circle, Corona CA 92880)*<br><br>Date:  May 21, 2026<br>Time:  1 :30 PM<br>Place:  Courtroom 302<br>       3420 Twelfth Street<br>       Riverside, CA 92501 |

///

///

///

Debtor's Opposition to Motion for Relief

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF RELEVANT FACTS..........................................................2

III.    LEGAL ARGUMENT.........................................................................................3

        A.      Movant Applies Only the First Prong of the Controlling Two-Part Test and
                Ignores the Prong That Is Dispositive. ...................................................3

        B.      Because No Unlawful Detainer Judgment Was Entered Prior to the Petition
                Date, the Debtor's Right to Seek Relief from Forfeiture Under CCP § 1179
                Was Fully Intact, and the Lease Remains Assumable. ............................4

        C.      The Debtor Reserves All Rights Regarding the Sufficiency of the Three-Day
                Notice and the Unlawful Detainer Proceedings........................................6

        D.      The Chapter 11 Filing Was Not Made in Bad Faith. .................................6

                1.      Timing...........................................................................................6

                2.      Number of creditors......................................................................6

                3.      Incomplete filings ........................................................................7

                4.      Genuine reorganizational purpose. ..............................................7

        E.      The Lease Is Necessary for an Effective Reorganization. .......................7

        F.      The Debtor Offers Concrete Adequate Protection and Requests That the Court
                Set a Deadline for Assumption or Rejection in the Alternative. ..............8

        G.      The Curtis and Kronemyer Factors Do Not Establish Cause for Stay Relief
                Under § 362(d)(1). ....................................................................................9

                1.      Judicial economy and complete resolution of the issues (*Kronemyer*
                        Factors 1, 4; *Curtis* Factors 1, 10, 11). ....................................9

                2.      Connection to the bankruptcy case and need for a specialized tribunal
                        (*Kronemyer* Factor 2; *Curtis* Factors 2, 4).............................10

                3.      Third-party involvement and the "two-party dispute" allegation (*Curtis*
                        Factor 6)......................................................................................11

                4.      Prejudice to the parties and the balance of hurt (*Kronemyer* Factor 3;
                        *Curtis* Factors 7, 12). ..............................................................11

IV.     CONCLUSION..................................................................................................12

## I.      **<u>INTRODUCTION</u>**

Movant Associates Equity Fund VI, LLC ("AEF" or "Movant") seeks relief from the automatic stay to resume an unlawful detainer action against Debtor and Debtor-in-Possession Concord Industrial Products, Inc. ("Debtor") regarding the commercial premises at 311 Bonnie Circle, Corona, California 92880 (the "Premises"). Movant's argument is that the Lease was terminated under California law prior to the Petition Date and is therefore not assumable under 11 U.S.C. § 365. That argument is legally incomplete and fails under controlling Ninth Circuit authority.

The controlling authority – *In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir. 1988), and *City of Valdez v. Waterkist Corp. (In re Waterkist Corp.)*, 775 F.2d 1089 (9th Cir. 1985) – establishes a two-part test for lease assumability in the context of a pre-petition termination claim. Movant addresses only the first prong and ignores the second entirely. Under *Windmill Farms* and *Waterkist*, even a lease that was terminated before the petition date remains fully assumable if, as of the petition date, the debtor retained the ability to seek relief from forfeiture under California Code of Civil Procedure § 1179 or any other applicable anti-forfeiture provision. That is precisely the case here.

As of the April 23, 2026 petition date (the "Petition Date"), no unlawful detainer judgment had been entered. California Code of Civil Procedure § 1179's thirty-day post-judgment window had never commenced, let alone expired. The Debtor's equitable right to seek anti-forfeiture relief was wholly intact. Under both *Waterkist* and *Windmill Farms*, the Debtor therefore retained the ability to assume the Lease as of the Petition Date.

This case is, moreover, a genuine multi-creditor Chapter 11 reorganization – not a single-asset filing designed to delay one creditor. The Debtor carries approximately $8.5 million in total pre-petition obligations. The Debtor's principal has committed to contributing new value to fund the reorganization, and the Debtor has identified an investor prepared to inject additional capital. Proposed counsel currently holds funds in trust sufficient to cover at least two months of post-petition lease payments and stands ready to tender the first such payment to AEF at the hearing. This is a reorganization in progress, and the Motion should be denied.

Debtor's Opposition to Motion for Relief

**II.       STATEMENT OF RELEVANT FACTS**

On or about May 16, 2019, the Debtor, as Lessee, and AEF, as Lessor, entered into a Standard Industrial/Commercial Multi-Tenant Lease (the "Lease") for the Premises at 311 Bonnie Circle, Corona, California 92880.

On December 8, 2025, AEF caused to be served upon the Debtor a 3-Day Notice to Pay Rent or Quit (the "Notice"), claiming unpaid rent of $276,624.26 for November and December 2025. The Notice contained a forfeiture election and expired on December 11, 2025, without payment.

On January 8, 2026, AEF filed a complaint for unlawful detainer against the Debtor in the Superior Court of California, County of Riverside, Case No. UDCO2600032. No trial was held and no unlawful detainer judgment was entered prior to the Petition Date.

On April 23, 2026 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition. The petition was filed on the date the unlawful detainer trial was scheduled, before the trial commenced. At the time of filing, only the emergency petition had been filed; schedules and the statement of financial affairs are being prepared and will be filed within the time permitted by the Bankruptcy Rules. **As of the Petition Date: (a) no unlawful detainer judgment had been entered; (b) no application for relief from forfeiture under CCP § 1179 had been filed or denied; and (c) the thirty-day post-judgment window within which a CCP § 1179 application could be filed had never begun to run.** The Debtor's right to seek anti-forfeiture relief under California law was fully intact.

The Debtor has approximately $8.5 million in total pre-petition obligations, including obligations to secured creditors and trade creditors in addition to AEF. This is a genuine multi-creditor reorganization case.

The Debtor's principal has committed to contributing new value to fund the reorganization, and the Debtor has identified an investor who is prepared to contribute additional capital. The Debtor is evaluating whether to proceed by way of a Chapter 11 plan of reorganization or a sale of substantially all assets under 11 U.S.C. § 363(f), with a determination to be made as the case progresses. Either path depends upon preserving the Lease.

Proposed counsel for the Debtor currently holds in trust funds sufficient to cover at least two months of post-petition lease payments at the contract rate. Proposed counsel is prepared to tender the first monthly payment to AEF at the hearing on this Motion, subject to the Court's direction.

## III.    LEGAL ARGUMENT

### A.    Movant Applies Only the First Prong of the Controlling Two-Part Test and Ignores the Prong That Is Dispositive.

Movant relies on *Windmill Farms* for the proposition that the Lease terminated prior to the Petition Date. For purposes of this Opposition, the Debtor does not contest that under *Windmill Farms* and California Civil Code § 1951.2(a), the Debtor's right to possession may have been terminated no later than January 8, 2026, when AEF filed its unlawful detainer complaint. *See In re Windmill Farms, Inc.*, 841 F.2d at 1471.

But *Windmill Farms* does not end with termination. The Ninth Circuit was explicit that lease assumability in the context of a termination claim is governed by a *two-part* test:

Assumability of a lease by a trustee in bankruptcy, in the context of a lease termination claim, involves a two-part test. The first part of the test is to determine whether the lease terminated before the petition in bankruptcy was filed. . . . ***The second part of the test requires the court to "determine whether the termination could have been reversed under a state anti-forfeiture provision or other applicable state law." This second step in the analysis "permits the [trustee] the same opportunities to avoid forfeiture of a lease . . . that it would have received under state law absent the bankruptcy proceedings.***"

*In re Windmill Farms, Inc.*, 841 F.2d at 1471–72 (citing *In re Waterkist Corp.*, 775 F.2d at 1091) (emphasis added). The court further held that if forfeiture relief remained available under California law, "the trustee's assumption of the lease would be proper." *Id.* at 1472.

Movant's papers do not address the second prong. That omission is dispositive, because the second prong resolves this case in the Debtor's favor.

Debtor's Opposition to Motion for Relief

**B.      Because No Unlawful Detainer Judgment Was Entered Prior to the Petition Date, the Debtor's Right to Seek Relief from Forfeiture Under CCP § 1179 Was Fully Intact, and the Lease Remains Assumable.**

The second prong of the *Windmill Farms*/*Waterkist* test asks whether, as of the petition date, the forfeiture could have been reversed under California anti-forfeiture law. California Code of Civil Procedure § 1179 is the controlling provision. It permits a court to grant a lessee relief from forfeiture upon a showing of hardship and full payment of delinquent rent. A § 1179 application must be filed within thirty days of entry of an unlawful detainer judgment.

The governing rule was acknowledged by the Bankruptcy Court for the Northern District of California in *In re Sanchez*, 1996 WL 757277 (Bankr. N.D. Cal. Sept. 24, 1996):

[I]t is enough for a bankruptcy court to determine that no CCP § 1179 application was denied, and that the time within which to bring one did not expire pre-bankruptcy. If a remedy was available under CCP § 1179 on the date a lessee filed a bankruptcy petition, the mere existence of that potential remedy (whether or not it could ultimately be realized by a given lessee) operates to prevent the lease from having been extinguished pre-bankruptcy and to preserve it for assumption under 11 U.S.C. § 365.

*In re Sanchez*, 1996 WL 757277, at *5 (emphasis added); *cf. In re Waterkist Corp.*, 775 F.2d 1089, 1092 (9th Cir. 1985) (reviewing a debtor's lease which was "terminated," leaving the debtor "a naked possessory interest in the [property] at the time the bankruptcy petition was filed," but determining that, under similar Alaska law, a court hearing an unlawful detainer action "would consider the equities of the situation before allowing the City to enforce . . . forfeiture") ("Applying Alaska law, we conclude that ***Waterkist's interest in the lease is not forfeited. The bankruptcy court correctly determined that <u>Waterkist could assume the lease as a debtor-in-possession</u>.***") (emphasis added).[1]

---

[1] *In re Hawkeye Ent., LLC*, 2024 Bankr. LEXIS 864, at * 18, 2024 WL 1528460, at *6 (Bankr. C.D. Cal. Apr. 8, 2024, Barash, J.), quoted parenthetically by AEF in support of its (incorrect) claim that "Debtor cannot assume the Lease in this bankruptcy case and has no right of possession of the Premises," is not to the contrary. Indeed, Judge Barash *expressly acknowledged the debtor's ongoing potential right to assume its terminated lease* as a basis for finding that the debtor's Chapter 11 case

Under the *Waterkist* standard, the merits of whether the Debtor would have prevailed on a § 1179 application are expressly irrelevant. The questions are simply: (1) was a § 1179 application denied before the Petition Date; and (2) had the time to bring one expired? Here, both questions must be answered in the Debtor's favor. AEF does not – and cannot – deny:

- No § 1179 application was ever filed or denied.

- Because no unlawful detainer judgment was entered prior to the Petition Date, the thirty-day post-judgment window had never commenced. The remedy under CCP § 1179 was entirely available to the Debtor on April 23, 2026.

Consequently, under both *Waterkist* and *Windmill Farms*, the Debtor retains the ability to assume the Lease as of the Petition Date.  As a matter of controlling Ninth Circuit law, AEF's Motion must be denied on this ground.

---

*was not* a "bad faith" filing:

> . . . Debtor did not lack good faith when it filed this chapter 11 case and invoked the automatic stay, rather than risking an uncertain outcome. Debtor's decision not to wait around to see what might happen to its business was entirely justified under the circumstances. Furthermore, ***the power to cure and assume an unexpired lease pursuant to Bankruptcy Code section 365, under the protection of the automatic stay arising from Bankruptcy Code section 362, are tools that Congress made available only in bankruptcy***. They are not available in the Superior Court.

*In re: Hawkeye Ent., LLC*, 2024 WL 1528460, at *8 (Bankr. C.D. Cal. Apr. 8, 2024) (emphasis added).  Consequently, *Hawkeye Ent.* supports the Debtor's understanding of the law, as outlined above – and not AEF's.  Indeed, *none* of the decisions cited by AEF supports AEF's misguided position. *In re Art & Architecture Books of the 21st Century*, 518 B.R. 43, 62–63 (Bankr. C.D. Cal. 2014) is readily distinguishable from the current case because there (unlike here), the debtor had *legitimately waived its redemption rights* as an express provision of its lease.  *Id*. ("the court determines that the Debtor validly *63 and expressly waived its rights to seek relief from forfeiture of the Lease under both California Code of Civil Procedure § 1179 and California Civil Code § 3275.").  Similarly, *In re Di Giorgio*, 200 B.R. 664, 667 (C.D. Cal. 1996), *vacated*, 134 F.3d 971 (9th Cir. 1998), *and abrogated by In re Perl*, 811 F.3d 1120 (9th Cir. 2016) Chapter 7 debtor-tenants who had *stipulated* to an unlawful detainer judgment and forfeiture of their residential lease. Consequently, the debtor's rights of redemption had been surrendered pre-petition. *Id*. ("On January 6, 1995, [landlord] Lee served the [tenants] Di Giorgios with a Notice to Pay Rent or Quit, demanding $8,000 on or before January 9, 1995. The Di Giorgios failed to pay the outstanding rental payments, and Lee initiated an unlawful detainer action on January 17, 1995. On January 20, 1995, ***the parties entered into a Stipulation for Judgment***. On February 15, 1995, ***judgment was entered wherein the lease was forfeited and the Di Giorgios agreed that they owed Lee $10,224 under the lease***.") (emphasis added).

---

**C.    The Debtor Reserves All Rights Regarding the Sufficiency of the Three-Day Notice and the Unlawful Detainer Proceedings.**

Importantly, *Windmill Farms*' holding applies only where the three-day notice was "properly given" under California law. *In re Windmill Farms, Inc.*, 841 F.2d at 1471. The Ninth Circuit itself did not assume the notice in that case was sufficient, and remanded for the bankruptcy court to make that determination. *Id.* ("We have assumed for purposes of our discussion that Vanderpark's three-days' notice to pay rent or quit was properly given. It may not have been."). If a notice is legally insufficient, "the notice would be ineffective and the lease would not have been terminated." *Id.* The Debtor reserves all rights to challenge the legal sufficiency of the Notice and the unlawful detainer proceedings, including compliance with CCP § 1162 and the accuracy of the rent amounts demanded.

**D.    The Chapter 11 Filing Was Not Made in Bad Faith.**

Movant contends the case was filed in bad faith based on: (i) the timing of the petition relative to the scheduled trial; (ii) that the Debtor is "one of few creditors" listed; and (iii) that the Debtor filed only a few case commencement documents. Each contention fails.

1.    Timing.

The timing of a bankruptcy filing does not establish bad faith where a legitimate reorganizational purpose exists. The Debtor filed its petition to preserve the opportunity to reorganize approximately $8.5 million in total pre-petition obligations owed to multiple creditors, including secured creditors, in addition to AEF. Filing to forestall an imminent adverse state court ruling is a lawful exercise of a statutory right, not evidence of bad faith. The Bankruptcy Court for this District has rejected materially identical arguments on comparable facts. *Cf. In re: Hawkeye Ent., LLC*, 2024 WL 1528460, at *8 (Bankr. C.D. Cal. Apr. 8, 2024) (rejecting allegations that Debtor's Chapter 11 filing to avoid unlawful detainer was a "litigation tactic") ("Debtor's decision not to wait around to see what might happen to its business was entirely justified under the circumstances.").

2.    Number of creditors

This is not a single-creditor case. The Debtor has approximately $8.5 million in pre-petition obligations to multiple creditors, including secured creditors and trade creditors. AEF is one of several

significant creditors. The premise of Movant's bad faith argument – that this case was filed solely to delay AEF – is not supported by the facts.  More fundamentally, it is legally incorrect.  *Cf. In re: Hawkeye Ent., LLC*, 2024 WL 1528460, at *6 (Bankr. C.D. Cal. Apr. 8, 2024) ("This case is simply not a two-party dispute. But even if it were otherwise, '"[p]etitions in bankruptcy arising out of a two-party dispute do not *per se* constitute a bad-faith filing by the debtors."' *In re Sullivan*, 522 B.R. at 616 (*quoting In re Stolrow's, Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988)). 'Courts that find bad faith based on two-party disputes do so where "it is an apparent two-party dispute that can be resolved outside the Bankruptcy Court's jurisdiction."' *In re Sullivan*, 522 B.R. at 616 (emphasis in original) (quoting *Oasis at Wild Horse Ranch LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102, at *10 (B.A.P. 9th Cir. August 26, 2011)").  As just noted, this case is demonstrably *not* a "two party dispute that can be resolved outside the Bankruptcy Court's jurisdiction."

3.    Incomplete filings

Only the emergency petition had been filed at the time Movant filed the Motion. The Debtor's schedules and statement of financial affairs are being prepared and will be filed within the time periods prescribed by Federal Rule of Bankruptcy Procedure 1007. This is unremarkable in a newly-filed Chapter 11 case and is no evidence of bad faith.

4.    Genuine reorganizational purpose.

The Debtor's reorganizational purpose is concrete and well-founded. The Debtor's principal has committed to contributing new value to fund the reorganization and has already made contributions to fund post-petition lease payments. An investor has been identified and is prepared to contribute additional capital. The Debtor is evaluating the appropriate reorganization structure – whether a Chapter 11 plan of reorganization or a sale under 11 U.S.C. § 363(f) better serves the Debtor's reorganization goals – with a determination to be made as the case develops. Either path requires preserving the Lease. This is a case with real assets, real creditors, real capital commitments, and a real reorganizational purpose.

**E.    The Lease Is Necessary for an Effective Reorganization.**

Movant asserts the Lease is not necessary to an effective reorganization. This contention is

without merit. The Premises is the Debtor's sole operating location and is the foundation of any value the estate can realize – whether through a going-concern sale to a third party or through a plan of reorganization supported by new value and investor capital.

It is the Debtor's burden to show that property is necessary for its reorganization, and the Debtor meets that burden here. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988). An effective reorganization is "reasonably in prospect" where the debtor has identified capital sources, demonstrated commitment by principals, and has a defined strategy for using the asset. The Debtor has an identified investor, a principal committed to new value contributions, funds on hand to make immediate post-petition lease payments, and a specific reorganization strategy. A reorganization is not only in prospect – it is underway.

Lifting the stay at the outset of this case, before the Debtor has had a meaningful opportunity to develop its reorganization, would eliminate the going-concern value the estate holds and reduce recoveries for all creditors – including AEF itself on any unsecured claim for lease rejection damages.

**F.    The Debtor Offers Concrete Adequate Protection and Requests That the Court Set a Deadline for Assumption or Rejection in the Alternative.**

Even if the Court were to find that some basis for stay relief exists – which the Debtor respectfully submits it does not – the appropriate remedy is not to lift the stay outright but to condition continued occupancy on adequate protection payments and to set a deadline for the Debtor to bring a motion to assume the Lease.

The Debtor is prepared to provide immediate, concrete adequate protection. Proposed counsel currently holds funds in trust sufficient to cover at least two months of post-petition lease payments. The Debtor is prepared to tender the first monthly payment directly to AEF at today's hearing. This is not a promise of future payment – the funds exist now and can be delivered today. This offer directly addresses the harm Movant claims to be suffering: non-payment of post-petition rent.

Movant's own motion form acknowledges this as a recognized form of relief where a lease "may be assumable": a deadline for assumption or rejection and adequate protection payments at the contract lease rate from the Petition Date. *See* Motion, Item 12. The Debtor requests that the Court,

---

Debtor's Opposition to Motion for Relief

in the alternative, enter an adequate protection order requiring monthly payments at the contract rate, with the first payment tendered at the hearing, and establishing a reasonable deadline for the Debtor to file a motion to assume or reject the Lease under 11 U.S.C. § 365(d)(4).

**G.      The Curtis and Kronemyer Factors Do Not Establish Cause for Stay Relief Under § 362(d)(1).**

Finally, AEF's *Curtis* and *Kronemyer* arguments in support of section 362(d)(1) relief (i.e., relief "for cause" to proceed in a non-bankruptcy forum) fail, for the reasons set forth below.

1.      <u>Judicial economy and complete resolution of the issues (*Kronemyer* Factors 1, 4; *Curtis* Factors 1, 10, 11).</u>

First, lifting the stay does nothing to promote judicial economy; nor does it resolve the parties' pending disputes. AEF's argument – i.e., that because the state-court unlawful detainer trial was scheduled to commence on the Petition Date, allowing that trial to proceed is the most economical path – misapprehends the scope of the present dispute. The state-court litigation can only adjudicate state-law possession and lease forfeiture. It cannot resolve the core bankruptcy issue that necessitates this Chapter 11 filing: the Debtor's statutory right to assume the Lease under 11 U.S.C. § 365, which relies on the Debtor's fully intact right to seek anti-forfeiture relief under California Code of Civil Procedure § 1179.  As Judge Barash noted in the closely analogous case before him:

> Permitting Smart Capital to pursue an unlawful detainer action in Superior Court would certainly allow for an adjudication of whether Debtor and/or WERM breached the Lease under California law. What it would not determine is whether Debtor is entitled – and if so, under what circumstances – to assume the Lease under Bankruptcy Code section 365, notwithstanding any such breaches. The Court finds, therefore, that granting the requested relief would not facilitate a complete resolution of the issues between Smart Capital and Debtor. Likewise, it would not resolve Debtor's need to address its substantial secured and unsecured debt.

*In re: Hawkeye Ent., LLC*, 2024 WL 1528460, at *10.

Moreover, as noted above, the Debtor expressly reserves its rights to challenge the legal sufficiency of AEF's December 8, 2025 Three-Day Notice and the accuracy of the rent demanded. Because these disputes over the alleged defaults must be determined before or in tandem with an assumption of the Lease, splitting the litigation between two forums would duplicate efforts rather than conserve them. Judicial economy strongly weighs against stay relief because the bankruptcy court must ultimately adjudicate these lease issues to determine assumability. "So, as a matter of judicial economy, it makes better sense to deny relief and permit the question of lease defaults to be adjudicated here." *In re Hawkeye Ent., LLC*, 2024 WL 1528460, at \*11.

2. <u>Connection to the bankruptcy case and need for a specialized tribunal (*Kronemyer* Factor 2; *Curtis* Factors 2, 4).</u>

Second, the litigation is closely connected to the value inherent in this Chapter estate – a factor which mandates the need for this Court's specialized expertise. AEF's claim that the California Superior Court (which is, by definition, a court of general jurisdiction) is a "specialized tribunal" is factually and legally flawed, as is AEF's incorrect claim that because the Lease allegedly terminated prepetition, the Premises are somehow not property of the estate and therefore have no connection to the bankruptcy.

As AEF well knows, the Debtor's Premises at 311 Bonnie Circle is the Debtor's sole operating location and is the absolute foundation of any value the estate can realize, whether through a Chapter 11 plan of reorganization or a § 363(f) sale.  Because the time to bring a § 1179 application had not expired prepetition, the Debtor retains an equitable interest in the Lease that is central to this bankruptcy proceeding. This factor alone is sufficient to support maintaining the stay, as the bankruptcy court is the uniquely specialized tribunal with exclusive jurisdiction to administer estate property and adjudicate the Debtor's assumption rights. "If it turns out that Debtor... breached the Lease, a court must determine whether such breach precludes assumption under section 365. This Court is the only court of the two authorized to do so." *In re Hawkeye Ent., LLC*, 2024 WL 1528460, at \*11.

---

Debtor's Opposition to Motion for Relief

3.    Third-party involvement and the "two-party dispute" allegation (*Curtis* Factor 6).

Third, AEF attempts to mischaracterize this Chapter 11 as a bad-faith, two-party dispute designed solely to delay AEF's state-court remedies.  The record proves otherwise. This is a genuine multi-creditor Chapter 11 reorganization carrying approximately $8.5 million in total prepetition obligations owed to various secured and trade creditors.  AEF is simply one of several significant creditors within a much larger and more complex capital structure – the entirety of which requires the Debtor's reorganization efforts.  Allowing AEF to proceed in state court would not *isolate* a two-party issue; it would fundamentally *disrupt* the recovery landscape for the entire creditor body. The involvement of third-party creditors therefore weighs heavily against granting stay relief to a single landlord.

4.    Prejudice to the parties and the balance of hurt (*Kronemyer* Factor 3; *Curtis* Factors 7, 12).

Finally, the balance of hurt and the risk of prejudice to other interested parties dictate that the stay remain in place. AEF's claimed "prejudice" – that it is being deprived of possession and accruing daily damages of $4,610.40 – is neutralized by the Debtor's offer of immediate, concrete adequate protection: tender the first monthly payment directly to AEF at the hearing, backed by funds in proposed counsel's trust sufficient to cover three months of post-petition lease payments at the contract rate.

By contrast, lifting the stay at the inception of this case would:

- Destroy a concrete reorganization effort backed by an identified investor and new value commitments from the Debtor's principal; and

- Eliminate the going-concern value of the estate, harming the Debtor and devastating the recoveries of the secured and trade creditors holding $8.5 million in claims.

Consequently, the balance of hardships tips decisively against AEF, as stay relief would terminate a viable reorganization while AEF is already adequately protected by cash payments. "If the Court grants relief and permits [the landlord] to pursue an unlawful detainer action in Superior

Court, Debtor (and its economic stakeholders) may lose the value of its assets and its viability as a going concern." *In re Hawkeye Ent., LLC*, 2024 WL 1528460, at *12.

## IV.    CONCLUSION

Movant has addressed only the first prong of the controlling *Windmill Farms*/*Waterkist* two-part test. Under the second prong, which Movant ignores entirely, the Lease remains fully assumable: as of the Petition Date, no unlawful detainer judgment had been entered, the CCP § 1179 thirty-day post-judgment window had never commenced, and the Debtor's equitable right to seek relief from forfeiture was wholly unimpaired. The mere availability of that remedy on the Petition Date is sufficient under *Waterkist*, *Windmill Farms*, and *In re Sanchez* to preserve the Lease for assumption and defeat the Motion.

This is, moreover, a genuine multi-creditor Chapter 11 with approximately $8.5 million in pre-petition obligations, an identified investor, new value commitments from the Debtor's principal, and funds on hand to make immediate post-petition lease payments. Movant's bad faith and reorganization necessity arguments are therefore not supported by the facts.  Moreover, the *Curtis* and *Kronemyer* factors do not establish cause for stay relief under § 362(d)(1). Accordingly, the movant has failed to meet its burden, and the automatic stay should remain in full force and effect.

The Debtor respectfully requests that the Court deny the Motion in its entirety. In the alternative, the Debtor requests that the Court enter an adequate protection order providing for monthly payments at the contract lease rate – with the first payment tendered at the hearing – and a reasonable deadline for the Debtor to file a motion to assume the Lease.

DATED: May 6, 2026                                SHIODA LANGLEY & CHANG LLP

By:  /s/Christopher J. Langley
     Christopher J. Langley
     Proposed Counsel for Debtor

- 12 -        Debtor's Opposition to Motion for Relief

**DECLARATION OF JOHN LEE**

I, JOHN LEE, hereby declare:

1.      I am the principal of Concord Industrial Products, Inc. ("Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case. I have personal knowledge of the facts set forth herein, except as to those matters stated on information and belief, as to which matters I believe them to be true. If called upon to testify, I could and would competently testify to the matters set forth below.

2.      I am submitting this declaration in support of the Debtor's Opposition to the Motion for Relief from Automatic Stay filed by Associates Equity Fund VI, LLC ("Movant") concerning the commercial premises located at 311 Bonnie Circle, Corona, California 92880 (the "Premises").

3.       Proposed counsel for the Debtor, Shioda, Langley & Chang LLP (the "Firm"), is currently in possession of approximately $450,000 in funds that I have provided. It is my intention to contribute these funds to the Debtor as new value capital contributions to support the reorganization, including the funding of post-petition obligations.

4.      I have been actively engaged in efforts to identify potential investors and strategic partners who may be willing to inject new capital into the Debtor's business or, alternatively, to acquire the Debtor's assets. As a result of those efforts, I believe that I have identified a prospective business partner who has expressed a genuine interest in either contributing new funds into the Debtor's operations or potentially purchasing the assets of the Debtor. Based on my discussions with this individual, I believe the prospective investor has provided me proof that it has financial resources and readiness to proceed with a transaction.

5.      Based on my discussions with the prospective investor, I believe the investor has funds available sufficient to fully reinstate the Lease with Movant, including payment of all amounts necessary to cure existing arrearages.

6.      The Debtor has been engaged in ongoing discussions with Movant regarding the Lease and the Premises. While those discussions have not been productive to date, the Debtor remains committed to reaching a consensual resolution, including an agreement on cure amounts,

- 13 -          Debtor's Opposition to Motion for Relief

reinstatement terms, or the orderly assignment of the Lease to the prospective investor.

7. It is my intention to do everything within my power to ensure that the Debtor fulfills its obligations under the Lease and to the estate, and I remain committed to supporting this reorganization to the best of my ability.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of May 2026.

John Lee
Principal, Concord Industrial Products, Inc.

Debtor's Opposition to Motion for Relief

## DECLARATION OF CHRISTOPHER J. LANGLEY

I, Christopher J. Langley, declare as follows:

1.   I am an attorney licensed to practice law in the State of California (SBN 258851) and a partner at Shioda, Langley & Chang LLP ("Firm"), proposed counsel for Concord Industrial Products, Inc. ("Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case. I have personal knowledge of the facts set forth herein. If called upon to testify, I could and would competently testify to the matters set forth below.

2.   I submit this declaration in support of the Debtor's Opposition to the Motion for Relief from Automatic Stay filed by Associates Equity Fund VI, LLC ("Movant") concerning the commercial premises located at 311 Bonnie Circle, Corona, California 92880 (the "Premises").

3.   As of the date of this declaration, I am holding in my attorney-client trust account the sum of $450,000 in funds received from John Lee, the Debtor's principal. These funds were received by the Firm for the purpose of funding ongoing post-petition obligations of the Debtor, including lease payments due to Movant under the Lease and administrative expenses of the estate.

4.   The Firm stands ready to tender payment of post-petition rent to Movant immediately upon the Court's direction or upon agreement of the parties, and is prepared to disburse such funds in accordance with this Court's orders and applicable law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 6, 2026, at San Gabriel, California.

/s/Christopher J. Langley
Christopher J. Langley
Proposed Counsel for Debtor and Debtor-in Possession

- 15 -      Debtor's Opposition to Motion for Relief

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4158 14th Street, Riverside, CA 92701

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FILED BY ASSOCIATES EQUITY FUND VI, LLC**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 5/6/2026_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Abram Feuerstein**    abram.s.feuerstein@usdoj.gov
- **Christopher J. Langley**    chris@slclawoffice.com, john@slclawoffice.com;langleycr75251@notify.bestcase.com
- **Tinho Mang**    tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com
- **Ali Matin**    ali.matin@usdoj.gov
- **Jessica M. Simon**    jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 5/6/2026_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Judge Scott H. Yun United States Bankruptcy Court 3420 Twelfth Street, Suite 345 Riverside, CA 92501-3819

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| Date | John Martinez | /s/Joh Martinez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**